**Rosen, Tsionis & Pizzo, PLLC**
*Counsel to the Debtor and Debtor in Possession*
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Daniel J. Lebrun, Esq.

**Hearing Date: September 14, 2026, at 10:00a.m.**
**Objection Deadline: September 7, 2026**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re: Case No.: 26-71752-las

ROSE MECHANICAL CORP., Chapter 11

Debtor.
-------------------------------------------------------------X

**DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING DEBTOR TO ENTER INTO PROPOSED SETTLEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**TO: THE HONORABLE LOUIS A. SCARCELLA**
**UNITED STATES BANKRUPTCY JUDGE**

Rose Mechanical Corp. (the "Debtor" or "Employer"), by and through its counsel, Rosen, Tsionis & Pizzo, PLLC, respectfully submits this as and for its motion (the "Motion") seeking entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of Title 11 of the United State Code (the "Bankruptcy Code), approving the settlement agreement (the "Settlement Agreement") entered into by and between the Debtor, and United Welfare Fund – Welfare Division, the United Welfare Fund – Security Division, the Joint Apprenticeship and Training Fund, and the United Service Workers Labor Management Corporation (together, the "Funds"), and United Service Workers Union, Local 355, IUJAT (the "Union") (Funds, Plan, and Union, together, the "Claimants", and collectively with the Debtor, the "Parties"), and authorizing the Debtor to enter into same, and respectfully state as follows:

## PRELIMINARY STATEMENT

1. This Motion is submitted by the Debtor for the purpose of obtaining Court approval of the settlement pursuant to the Settlement Agreement annexed hereto as **Exhibit "A"** and authorizing the Debtor to enter into the settlement.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested herein is Rule 9019(a) of the Bankruptcy Rules and section 105(a) of the Bankruptcy Code.

## BACKGROUND

### A. The Bankruptcy Filing

5. On May 4, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing case number 26-71752-las (the "Bankruptcy Case"), in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

6. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors committee has been appointed in this case.

### B. Pre-Petition Events

7. Prior to the Petition Date, obligations of the Debtor arose under the terms of the collective bargaining agreements (the "CBAs") with the Union and the Funds' Trust Agreements.

8. The Funds prepared a report for the period from March 1, 2025, through July 15, 2025 (the "Report"), which was provided to the Debtor and the Claimants.

9. The Union and the Trustees of the Funds made a demand for arbitration regarding the Report findings on or about July 15, 2025, to be heard by Arbitrator Aaron Shriftman, for, *inter alia*, monetary damages and other relief pursuant to the CBAs and the Funds' Trust Agreements including to collect the amounts found to be due and owing pursuant to the Report.

10. Additional contributions became due and owing during the time period from March 1, 2025, through May 31, 2026 (the "Delinquency Period")[1] and the Claimants have alleged that the total amount owed by the Debtor is $ 390,761.02 including interest and liquidated damages (the "Claims").

11. The Parties acknowledge that the Delinquency Period does not include delinquencies that may be found pursuant to a payroll compliance examination or audit of Employer's books and records in accordance with the Debtor's CBAs with the Union the Funds' Trust Agreements.

**C. The Settlement**

12. The Parties, through their respective counsel, engaged in arm's length negotiations and reached an agreement, subject to the Bankruptcy Court's approval, resolving the Claims.

13. A summary of the pertinent terms of the Settlement Agreement are set forth below; however, the Court and all interested parties are respectfully referred to the Settlement Agreement for its complete terms, which is annexed to the Motion as **Exhibit "A"**.

**D. Settlement Consideration**

14. Subject to Bankruptcy Court approval, the Parties have agreed to the following, which shall constitute the full and final satisfaction of all claims by and against each of the Parties:

[1] The Parties acknowledge that the due dates for the working assessment, JATF, and LMC obligations are set differently than the due dates for the dues, United Welfare Fund – Security Division, and United Welfare Fund – Welfare Division obligations. Therefore, the start date for when a financial obligation becomes delinquent is different for the two sets of entities.

a. **<u>Settlement Sum</u>:** The "Settlement Sum" shall consist of the total principal amount of **$60,000.00** to fulfill the Employer's obligations to the Claimants that have come due and owing for the Delinquency Period.

b. **<u>Payments</u>:**

   i. <u>Payment Terms</u>: The Employer agrees that it will pay the Settlement Sum in accordance with the following terms:

      1. This Settlement shall become effective upon the entry of a final order ("Order") of the bankruptcy Court being entered. The debtor shall notice this Settlement for a hearing within five (5) business days of full execution by all of the Parties;

      2. The Settlement Sum shall be made in twelve (12) monthly equal self-amortizing payments;

      3. Interest shall be charged on the Settlement Sum at the rate of ten percent (10%) per cent per annum;

      4. Twelve (12) equal payments of $5,274.95 each, including the Settlement Sum plus interest as described in Paragraph 2.a.iii., shall be made on the first day of each month;

      5. Payments shall commence on the first day of the month after entry of the Order, with the following payments payable on or before the first (1st) of each subsequent month.

c. **<u>As to Reinstatement to the United Welfare Fund – Welfare Division</u>:**

   i. As a result of the Parties entering into the instant Agreement, the Employer will be reinstated to the United Welfare Fund – Welfare Division (the "Welfare Fund") effective August 15, 2026, pending fulfilment of the following conditions, outlined below in Paragraph 4(b) of this Agreement.

   ii. To remain an active participant in the Welfare Fund, the Employer must follow these conditions:

      1. In order to properly integrate employees of Employer who wish to utilize the benefits available to them as participants of the Welfare Fund, the Employer must provide all paperwork and forms required by the Welfare Fund office by the due date determined by the Welfare Fund office;

2. The Employer must provide information regarding all of its employees to the Welfare Fund, including, but not limited to, hire dates and number of hours worked in each month, beginning April 1, 2026;

3. The Employer must make each month's required contributions to the Welfare Fund in full and in a timely manner in accordance with the terms and conditions of its collective bargaining agreement with the Union;

4. In addition to each month's required contributions to the Welfare Fund, the Employer must remain current on the payment plan as set out in Paragraph 2 of this Agreement

iii. If the Employer fails to meet conditions 4(b)(i) and/ or 4(b)(ii), the Welfare Fund office will be unable to process the Employer's employees and enroll them for Welfare Fund benefits.

iv. If the Employer fails to meet conditions 4(b)(iii) and/ or 4(b)(iv), in addition to any other remedies available pursuant to Law or under this Agreement, the Employer will immediately be suspended from participation in the Welfare Fund.

d. **As to audit compliance and future action:**

i. The Employer agrees that, within 45 days of demand, it will comply with audit proceedings as required by its collective bargaining agreement with the Union and the Funds' Trust Document for periods after the Deficiency periods; and

ii. This Settlement Agreement resolves all claims and any audits up to the Petition Date; and

iii. The Employer agrees that it will submit future remittance reports and the concomitant contributions on a timely basis.

e. **Default and Remedy:**

i. If the Employer breaches any of the terms of this Agreement, and is thereby in default, the Claimants may take whatever actions they consider reasonably appropriate to collect all amounts owed to it by the Employer, including, but not limited to:

1. The Claimants can recover the unpaid balance of the Settlement Amount as of the date of Default plus interest of two percent (2%) above the prime rate charged by the Plaintiff Funds' depository bank as of January 1, 2026 and July 1, 2026, which interest shall remain in effect until the next interest rate determination; and

2. Suspending the Employer from participation in the Welfare Fund, which will result in, *inter alia*, the suspension of all benefits available thereunder; and

3. Preparing an audit for any time period for which the Employer does not comply with audit proceedings based on the rights and responsibilities provided to the Trustees pursuant to the Trust Documents and the collective bargaining agreement between the Union and the Employer including, but not limited to, preparing an estimated audit for the time period at issue.

ii. A breach of this Agreement will occur in the event:

1. The Employer fails to remit any payment as set out in paragraph 2(a) of this Agreement; or

2. Any check or other payment instrument provided by the Employer is dishonored by the bank when presented for payment; or

3. The Employer fails to remain current in its contribution remittances pursuant to its collective bargaining agreement with the Union (the collective bargaining agreement to which the Employer is currently a party is attached hereto and made a part hereof as Exhibit A); or

4. The Employer fails to present its books and records for audit within 45 days of demand for a compliance audit by the Funds.

f. **Remedy Upon Default**:

i. In the event of a Default by the Employer, as described in Paragraph 5.b.i., ii, or iii of this Agreement, the Claimants shall be entitled to satisfaction of the Settlement Sum, less amounts already paid by the Employer ("Default Amount") within three (3) calendar days from the date of the Written Notice of Default provided pursuant to Paragraphs 7 and 20 of this Agreement .

ii. In the event of a Default by the Employer, as described in Paragraph 5.b.iii of this Agreement, the Claimants shall be entitled to

immediately suspend the Employer from participation in the Welfare Fund without further notice. Notice of Default shall be considered full, complete, and sufficient notice of suspension from the Welfare Fund.

iii. In the event of a Default by the Employer, as described in Paragraph 6.b.iv of this Agreement, and the failure of the Employer to remit the Default Amount as described in Paragraph 8.a. of this Agreement, the Claimants shall be entitled to immediate satisfaction in the form of an entry of judgment, ordering the Employer to comply with audit proceedings, and for attorney's fees to be made, upon application to the Bankruptcy Court of the Eastern District of New York, which shall retain jurisdiction for purposes of overseeing enforcement of the Consent Judgment in the case of an unremedied Default.

iv. Alternatively, and in their sole discretion, the automatic stay shall be vacated and Claimants may pursue any and all available remedies, including an enforcement and collection action in any appropriate Court.

v. The Employer agrees to waive any right to challenge or contest any actions by any Claimant under this paragraph except to contest that a Default has occurred.

## **RELIEF REQUESTED**

15. By this Motion, the Debtor seeks approval of the Settlement Agreement as being fair, equitable, and in the best interests of the Debtor's estate and its creditors, in accordance with section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

16. For the reasons set forth more fully below, the Debtor believes that the settlement falls well above the lowest level of reasonableness and is in the best interests of the Debtor's estate. Accordingly, the Debtor respectfully requests that the Court approve the Settlement Agreement.

## **LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS**

17. Compromises and settlements are common in bankruptcy cases. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 130 (1939). The structure and provisions of the Bankruptcy Code promote

negotiation and settlement for the benefit of creditors in accordance with “the policy of the law generally [which is] to encourage settlements.” *In re Jackson Brewing Co.,* 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible “consistent with obtaining the best possible realization.” *In re Carla Leather, Inc.,* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984) *aff’d*, 50 B.R. 764 (S.D.N.Y. 1985).

18. Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides: “On the trustee’s motion and after notice and a hearing, the court may approve a compromise or settlement.” Fed. R. Bankr. P. 9019(a).

19. Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established by case law and on whether the purported settlement is reasonable and in the best interests of creditors. The United States Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation. It is here that we must start in the present case.

*Anderson*, 390 U.S. at 414.

20. The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Bankruptcy Judge is “not to decide the numerous questions of law and fact

raised by appellants but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (193). *Accord, In re Gardi,* 273 B.R. 4, 18 (Bankr. E.D.N.Y. 2002); *In re Interstate Cigar Co.,* 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999); *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997); *In re Purofied Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993). The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

21. In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts [had to conduct] . . . an exhaustive investigation and determination of the underlying claims." *Purofied Down Products,* 150 B.R. at 522-23. In *Carla Leather*, the court explained the policy underlying the abbreviated review of settlements under Bankruptcy Rule 9019 as follows:

> The very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise . . . . This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

*Carla Leather,* 44 B.R. at 470; *see also Purofield Down Products,* 150 B.R. at 522-23.

22. In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues. *Interstate Cigar,* 240 B.R. at 822; *Spielfogel,* 211 B.R. at 143-33. Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972). *See also In re International Distribution Centers Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991). In so doing, the court may

consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson,* 390 U.S. at 444.

**THE SETTLEMENT AGREEMENT SHOULD BE APPROVED**

23. The Debtor respectfully submits that the Settlement Agreement falls well above the lowest point in the range of reasonableness. There were multiple factors that the Debtor considered in reaching the proposed settlement.

24. *First*, the settlement provides for a significant reduction in the Debtor's overall liability from the Claims of $390,761.02, including interest and liquidated damages, to the Settlement Sum of $60,000.00, representing a discount of approximately eighty-five percent (85%), which provides a meaningful benefit to the estate and its creditors. Moreover, the Debtor is not required to pay the Settlement Sum in a single lump-sum payment; instead, it negotiated installment payments over a period of time.

25. *Second*, the Settlement Agreement provides a mechanism for the Debtor to be reinstated to the Welfare Fund pending fulfillment of the conditions imposed by the Settlement Agreement.

26. *Third*, the Settlement Agreement provides a mechanism for the Debtor to move forward toward confirmation of a consensual plan of reorganization, thereby avoiding the delay and expense of contested confirmation proceedings with the Claimants.

27. *Finally*, the Settlement Agreement represents a complete resolution of all disputes between the Parties arising during the Delinquent Period, which avoids the necessity of litigation and/or further arbitration, and associated costs.

28. As a result of all of the above, the Debtor exercised its best business judgment in deciding to enter into the Settlement Agreement. The Debtor submits that the Settlement Agreement is fair, reasonable, and in the best interests of the Debtor's estate, and the Debtor respectfully request this Court approve the Settlement Agreement.

**WHEREFORE**, for all of the reasons set forth herein, the Debtor respectfully requests that this Court enter an order: (i) authorizing the Debtor to enter into and approving the Settlement Agreement; together with (ii) such other, further, and different relief that this Court deems just and proper.

Dated: August 13, 2026
Huntington, New York

Respectfully submitted,

**Rosen, Tsionis & Pizzo, PLLC**
*Counsel to Rose Mechanical Corp.*
*Debtor and Debtor-In-Possession*

By: */s/ Avrum J. Rosen*
Avrum J. Rosen, Esq.
Daniel J. LeBrun, Esq.
38 New Street
Huntington, New York 11743
Tel: (631) 423-8527
arosen@ajrlawny.com
dlebrun@ajrlawny.com